# In the United States Court of Federal Claims

No. 13-232C

(Filed: August 21, 2014)

| | | |
|---|---|---|
| ************************************** ) | | Patent case; motion to compel |
| ) | | production of documents claimed |
| **CAMERON LANNING CORMACK,** ) | | to be protected against disclosure |
| ) | | by attorney-client privilege |
| **Plaintiff,** ) | | |
| ) | | |
| **v.** ) | | |
| ) | | |
| **UNITED STATES,** ) | | |
| ) | | |
| **Defendant,** ) | | |
| **and** ) | | |
| ) | | |
| **NORTHROP GRUMMAN SYS. CORP.,** ) | | |
| ) | | |
| **Defendant-Intervenor.** ) | | |
| ) | | |
| ************************************** | | |

Rodney R. Sweetland, Duane Morris LLP, Washington, D.C., for plaintiff.  With him on the brief were James L. Beausoleil, Jr. and Jeffrey S. Pollack, Duane Morris LLP, Philadelphia, Pennsylvania, Anthony J. Fitzpatrick, Duane Morris LLP, Boston, Massachusetts, and Christopher J. Tyson, Duane Morris LLP, Washington, D.C.

Scott D. Bolden, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him were Stuart F. Delery, Assistant Attorney General, Civil Division, and John Fargo, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Michael F. Kiely, United States Postal Service, Washington, D.C.

Gregory H. Lantier, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for defendant-intervenor.

**OPINION AND ORDER**

LETTOW, Judge.

In this patent case, defendant-intervenor, Northrop Grumman Systems Corporation ("Northrop Grumman Systems" or "Systems") seeks from plaintiff, Mr. Cameron Lanning Cormack, production in discovery of a set of documents comprising correspondence and communications related to the patent prosecution of U.S. Patent No. 7,781,693 ("the '693

1

patent"), the patent at issue.[1]  Mr. Cormack contends that the documents are protected against disclosure by the attorney-client privilege.  Northrop Grumman Systems asserts that the documents are properly discoverable because Mr. Cormack waived the attorney-client privilege to these documents when he earlier produced correspondence and communications related to the same subject matter.  Mr. Cormack concedes that he waived his attorney-client privilege to the earlier set of documents but argues that attorney-client privilege has not been waived for the documents attendant to patent prosecution.

## BACKGROUND

Mr. Cormack filed his complaint in this court on April 3, 2013, alleging that the '693 patent, issued to him on August 24, 2010, was being infringed by the United States Postal Service ("Postal Service").  *See Cormack v. United States*, __ Fed. Cl. __, __, 2014 WL 3555255, at *1 (July 18, 2014) (addressing earlier discovery disputes).  In particular, Mr. Cormack alleges that mail sorting devices called Flats Sequencing Systems, manufactured by Northrop Grumman Systems and delivered to the Postal Service, infringe this patent.  *Id.*  Due to an indemnity clause in the Postal Service's contract with Northrop Grumman Systems, the court granted Systems's motion to intervene as a defendant-intervenor.  *Id.*, at *2.

On November 14, 2013, the court held a preliminary scheduling conference during which the parties and the court developed an agreed schedule regarding discovery.  *See* Scheduling Order, Nov. 14, 2013, ECF No. 33.  Under this schedule, the government would produce source code to Mr. Cormack by November 27, 2013.  *Id.*  By February 14, 2014, Mr. Cormack would submit to the defendants his infringement contentions.  *Id.*  Six weeks later, by March 28, 2014, the defendants would submit their contentions of non-infringement, unenforceability, and invalidity, along with an accompanying production of documents.  *Id.*  On April 30, 2014, Mr. Comack's response to any invalidity contentions were due.  *Id.*  Following these deadlines, the court specified additional deadlines for a joint claim-construction statement and briefing on claim construction.  *Id.*[2]

During discovery, Northrop Grumman Systems made document requests to Mr. Cormack.  *See* Def.-Intervenor Northrop Grumman Systems Corporation's Mem. of Law in Support of Mot. to Compel Discovery of Documents from Pl. ("Def.-Intervenor's Mot. to Compel") at 2 & Ex. 1, ECF No. 54.  In response, Mr. Cormack produced documents and submitted three privilege logs, dated October 31, 2013 ("First Privilege Log"), January 21, 2014 ("Second Privilege Log"), and February 3, 2014 ("Third Privilege Log"), which provided a brief description of documents withheld and the reasons they were withheld.  *Id.*  As part of his discovery disclosures, Mr. Cormack indicated that he conceived of the inventions claimed in the

---

[1]Because the patent application was filed and granted prior to the effective date of the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011), the court's consideration of issues in the case is based upon the law in force at the time of issuance.  *See Tobinick v. Olmarker*, 753 F.3d 1220, 1223 n.1 (Fed. Cir. 2014).

[2]At this juncture, the parties have completed briefing claim-construction terms in preparation for a *Markman* hearing to be held August 27, 2014.

'693 patent at least as early as August 2004. *Id.* Ex. 6 (Pl.'s Resp. to Def.-Intervenor's First Set of Interrog.), at 7. On March 28, 2014, as required by the court's scheduling order, Northrop Grumman Systems served its invalidity contentions. *Id.* at 3. As part of its invalidity contentions, Systems alleged that engineers at Lockheed Martin had conceived of the technology claimed in the '693 patent by July 2004, prior to the filing date of the application that resulted in the '693 patent, May 23, 2006, and prior to Mr. Cormack's date of conception. *Id.* at 3 & n.2. Thereafter, on April 28, 2014, Mr. Cormack supplemented his interrogatory response regarding the date of conception, changing it from August 2004 to November 2003. *Id.* at 3, Ex. 7, at 7. In support of his amendment, Mr. Cormack produced 57 documents previously withheld and listed on his privilege logs, which, according to his counsel, are all related to the dates of conception, reduction to practice, and diligence. *Id.* at 3; Pl.'s Resp. in Opp'n to Def.-Intervenor Northrop Grumman Systems Corporation's Mot. to Compel ("Pl.'s Opp'n") at 3, ECF No. 58. The documents produced on April 28, 2014 reportedly predate the filing of the '693 patent application. *Id*.

By its motion to compel, Northrop Grumman Systems seeks production of Document Nos. 2, 17, 38-54, 59-73, 75-83, and 94-130 from the Second Privilege Log and Document Nos. 4-8 from the Third Privilege Log. Def.-Intervenor's Mot. to Compel at 1 & n.1. These documents are described in the privilege logs as related to patent prosecution, and they all post-date the filing of the '693 patent application. *Id*. at 1, 4-5. Northrop Grumman Systems argues that Mr. Cormack waived the attorney-client privilege as to these documents through his disclosure on April 28, 2014 of documents covering the same subject matter. *Id.* at 5. Mr. Cormack has resisted the motion by arguing that the documents sought by Northrop Grumman Systems do not cover the same subject matter as the documents he previously disclosed. Pl.'s Opp'n at 5-6. After Northrop Grumman Systems filed its reply, Def.-Intervenor's Reply in Support of Mot. to Compel ("Def.-Intervenor's Reply"), ECF No. 61, a hearing on the motion to compel was held August 5, 2014.

### STANDARDS FOR DECISION

Rule 26(b) of the Rules of the Court of Federal Claims ("RCFC") defines the scope of discovery to include "any nonprivileged matter that is relevant to any party's claim or defense." RCFC 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* Discovery is limited by relevant privileges, including the attorney-client privilege. *See* RCFC 26(b)(1), (b)(3)(A). Federal Rule of Evidence 501 provides that the "'common law – as interpreted by the United States courts in the light of reason and experience'" – shall govern claims of privilege in federal courts. *In re Kellogg Brown & Root, Inc.*, __ F.3d __, __, 2014 WL 2895939, at *2 (D.C. Cir. June 27, 2014) (quoting Fed. R. Evid. 501). "The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Whether this privilege applies depends on the particular circumstances at hand. *Id.* at 396-97; *Confidential Informant 59-05071 v. United States*, 108 Fed. Cl. 121, 129-30 (2012).

A party may assert this privilege by withholding otherwise discoverable information, expressly claiming the privilege, and "describ[ing] the nature of the documents . . . not produced or disclosed – and do[ing] so in a manner that . . . will enable other parties to assess the claim." RCFC 26(b)(5)(A).  A party who discloses communications subject to the privilege, however, waives the privilege with respect to the materials disclosed.  *See Genentech*, 122 F.3d at 1415. Such a waiver of attorney-client privilege applies to "all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (citing *Genentech*, 122 F.3d at 1416 ("When the attorney-client privilege has been waived, whatever the subject matter of the waiver, the privilege is gone." (internal citation omitted)); *see also In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 255 (6th Cir. 1996) (specifying that a waiver of attorney-client privilege applies to all communications within the same subject matter); *In re Continental Ill. Sec. Litig.*, 732 F.2d 1302, 1314-15 & n.18, 20 (7th Cir. 1984) (same, commenting on precedents in circuit courts).[3]

The scope of the subject matter of a waiver is not defined by a bright line test; rather, courts must weigh (1) "the circumstances of the disclosure," (2) "the nature of the legal advice sought," and (3) "the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James*, 412 F.3d at 1349-50.  In particular, courts are concerned with basic notions of fairness, aiming to prevent a party from disclosing communications supporting its position while simultaneously withholding communications that do not.  *Id.* at 1349; *see also Wi-LAN, Inc. v. LG Elecs., Inc.*, 684 F.3d 1364, 1369 (Fed. Cir. 2012) ("Enacted in 2008, [Fed. R. Evid. 502(a)] limited the effect of waiver by strongly endorsing fairness balancing."); *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) ("[S]elective waiver of [attorney-client] privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. . . .  In such a case, the party uses the attorney-client privilege as both a sword and a shield." (internal citations omitted)). When a party knowingly produces a document in unredacted form, a court will find that disclosure is sufficient to waive privilege regarding all of the subject matters addressed.  *Fort James*, 412 F.3d at 1350 ("[Plaintiff] should have redacted those portions of the documents produced.  A party's failure to protect its privilege can result in a loss of that privilege.").

## ANALYSIS

The crux of the parties' disagreement is how to define the scope of Mr. Cormack's waiver.  Northrop Grumman Systems seeks to define the waiver broadly, reaching from the pre-filing disclosures that have been made to encompass also all communications with patent prosecution counsel during the prosecution of the '693 patent.  Def.-Intervenor's Mot. to Compel at 7.  Mr. Cormack argues that his waiver was limited, only covering communications that pre-dated the patent application and concerned the date of conception, date of reduction to practice, and diligence in reduction to practice.  Pl.'s Opp'n at 3.  Systems responds that the documents produced on April 28, 2014 covered more topics than the three listed by Mr. Cormack, *see* Def.-

---

[3]Privilege can be waived explicitly, through knowing disclosure of privileged documents, or implicitly, by placing privileged matters in controversy.  *See Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001).

Intervenor's Reply at 3-5, and argues that a temporal limitation based upon the date of the patent application is artificial, *id.* at 7-9.

A. *Delineating the Subject Matter of the Waiver*

In delineating the subject matter of the waiver, courts have sought to balance the interests of each party. Courts will not define the subject matter so narrowly as to permit a party to "rely on favorable legal opinions, but protect the communications on which those opinions depend." *Fort James*, 412 F.3d at 1351. Courts in patent cases have defined subject matter to require disclosure of all communications specific to certain statutory requirements for patentability. For example, in *Buyer's Direct Inc. v. Belk, Inc.*, No. 12-00370-DOC, 2012 WL 1416639 (C.D. Cal. Apr. 24, 2012), a third party produced documents related to the first public disclosure or offer to sell and first shipment, which are governed by 35 U.S.C. § 102(b) (2006). *See* 2012 WL 1416639, at *5-*6.[4] The defendant argued that this disclosure waived all claims of privilege not only to documents regarding first offer for sale and first shipment, but also to materials relevant to different aspects of patentability found in other subsections of Section 102 as it existed prior to the Leahy-Smith America Invents Act, *e.g.*, date of conception, reduction to practice, and other similar issues. *Id.* The court determined that because the party had produced documentation under 35 U.S.C. § 102(b) (2006), its waiver applied to all other communications related to first public disclosure or offer to sell and first shipment. *Id.* This waiver, however, did not extend to topics addressed in other subsections of 35 U.S.C. § 102 (2006). *Id.* In a similar vein, the court in *Lear Automotive Dearborn, Inc. v. Johnson Controls, Inc.*, No. 04-73461, 2006 WL 800740 (E.D. Mich. Mar. 28, 2006), limited the waiver of privilege to the specific subject matters addressed by the disclosed documents. 2006 WL 800740, at *1 (finding that a waiver as to the date and content of conception did not extend to all matters regarding validity or prosecution of the patent). Correspondingly, when a party discloses communications discussing specific prior-art references, as happened in *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568 (N.D. Cal. 2008), the court will not permit the party then to withhold additional communications related to those references. 254 F.R.D. at 578. Yet, the court in *Phoenix Solutions* limited the waiver to only those specific prior-art references covered by the disclosure and did not extend the waiver to communication about additional prior art references not addressed in disclosed documents. *Id.*

The parties agree that Mr. Cormack's waiver extends to documents related to the date of conception, date of reduction to practice, and due diligence. Northrop Grumman Systems asserts that these issues "indisputably concern [issues of general] patent prosecution, making them indistinguishable from the communications [Mr. Cormack] refuses to produce." Def.-Intervenor's Mot. at 8. This misstates the law regarding patent prosecution. Congress had set these three issues apart from other issues of patent prosecution in 35 U.S.C. § 102(g) (2006), and it can be appropriate to limit the subject matter of a privilege waiver based upon the specific

---

[4]Section 102 was substantially revised by the Leahy-Smith America Invents Act in 2011. The pre-2011 version of Section 102 addressed discrete issues of patentability in specific subsections. Decisions citing to the preexisting Section frequently used the subsections as a shorthand to define concepts and issues in their analysis. Similarly, here, the court will provide citations to specific subsections of the prior version of Section 102 where appropriate.

statutory subsection references.  *See Buyer's Direct*, 2012 WL 1416639, at \*5-\*6.  In short, there is no basis to extend a pre-filing waiver respecting these three issues to the entirety of patent prosecution.  For example, the court in *Lear Automotive* concluded that questions involving the date and content of conception were sufficiently independent to limit the scope of a waiver to only those issues.  2006 WL 800740, at \*1.[5]

### B. *Temporal Considerations*

Northrop Grumman Systems also objects to Mr. Cormack's contention that the filing date of the '693 patent is an appropriate cut-off for his waiver.  Def.-Intervenor's Reply at 7-9.  Contrary to Northrop Grumman Systems's assertions, temporal considerations can come into play.  In a number of patent cases, courts have determined that the filing date of the patent application denotes "a fundamental divide between patent drafting and patent prosecution that cannot reasonably be bridged by the extension of a waiver," absent additional facts.  *Phoenix Solutions*, 254 F.R.D. at 578; *see also Lear Automotive*, 2006 WL 800740, at \*1 (declining to extend waiver regarding date of conception to documents related to validity and generally to patent prosecution, *i.e.*, documents created after the application was filed).  Nonetheless, factual circumstances can exist where the court will require disclosure of documents regardless of timing.  In *Phoenix Solutions*, the court did not generally require disclosure of documents after the filing date of the patent application, but because the party already disclosed documents addressing specific prior-art references, any additional documents pertaining to those same references needed to be produced, even if they were created after the filing date.  254 F.R.D. at 578.  Similarly, in *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4076319 (N.D. Cal. Aug. 18, 2014), because a disclosed communication from an inventor to his counsel "d[id] not contain any post-filing legal analysis or theories regarding the application, the invention, or prior art," the court "conclude[d] that the appropriate subject[-]matter waiver should not include any post-filing communications." 2014 WL 4076319, at \*4 (citing and adopting the reasoning of *Phoenix Solutions*).  Additionally, in *Pacing Techs., LLC v. Garmin Int'l, Inc.*, No. 12-cv-1067 BEN, 2013 WL 4774765 (S.D. Cal. Sept. 5, 2013), it became apparent that the plaintiff produced only documents generated after a certain draft application had been prepared, to create a tactical advantage.  2013 WL 4774765, at \*5 ("[I]t is clear from the briefing that [plaintiff] intended to use the . . . draft application and communications discussing that draft as a sword to establish a priority date predating the filing date of [the defendant's] patent.  Thus, fairness dictates that documents showing the preparation and finalization of the . . . draft patent application must be produced . . . .").  The court required production of documents that were created in relation to preparation of the draft application, the

---

[5]A court did find a relatively broad waiver in *Theranos, Inc. v. Fuisz Techs., Ltd.*, No. C 11-5236 PSG, 2013 WL 2153276 (N.D. Cal. May 16, 2013), but the partial disclosures of attorney-client communications in that case had a bearing on an overarching issue that concerned use of confidential information.  That usage *vel non* permeated the entire case, and, by ordering full disclosure of e-mails and communications on the same subjects as those covered by the voluntary production, the court endeavored to prevent the disclosing party from "cherry-picking selective communications that are favorable to him."  2013 WL 2153276, at \*4.

In contrast to *Theranos*, there is no evidence of selective disclosure in this instance.

first of which appeared about a month before the draft, but did not extend the waiver to documents created after the draft. *Id.*

As a general matter, the court agrees with the analyses in *Phoenix Solutions* and *Verinata Health* that activities prior to filing a patent application, *e.g.*, patent drafting, are fundamentally different from activities after the application is filed, *i.e.*, patent prosecution. *See Phoenix Solutions*, 254 F.R.D. at 578; *Verinata Health*, 2014 WL 4076319, at *4. In arguing that courts disfavor limiting privilege waivers based upon temporal considerations, Systems cites decisions by courts that are factually distinguishable. *See* Def.-Intervenor's Reply at 7-8. In the decisions cited, courts disfavored artificial cut-off dates created by the disclosing party because they increased the likelihood that the party was seeking an unfair tactical advantage. *See, e.g.*, *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 765 F. Supp. 611, 613-14 (N.D. Cal. 1991) (rejecting a temporal limitation on a waiver that arose from an advice-of-counsel defense); *Smith v. Alyeska Pipeline Serv. Co*, 538 F. Supp. 977, 981-82 (D. Del. 1982) (declining to limit a privilege waiver to documents created before plaintiff's counsel intentionally sent a letter originally prepared for the client to opposing counsel). The unsuccessfully attempted temporal divisions in these cases do not equal or even approach the "fundamental divide" between drafting a patent application and prosecution after a patent application has been filed. Because preparing a patent application for filing and subsequently defending a patent application after filing are such divergent activities, there is minimal concern that Mr. Cormack is asserting an artificial deadline for tactical reasons.[6] Specifically, the court finds Mr. Cormack's privilege waiver to apply to communications related to the date of conception, date of reduction to practice, and due diligence, generated both before and after the filing of the patent application. In other respects, the filing of the application limits Mr. Cormack's waiver, and he has no obligation to produce documents and communications attendant to patent prosecution regarding other topics, subject to the analysis in the next section.

C. *Additional Subject Matter*

In his pre-filing disclosure, Mr. Cormack released documents that arguably covered topics beyond date of conception, date of reduction to practice, and due diligence. At the hearing, Northrup Grumman Systems provided three documents disclosed by Mr. Cormack as examples. Hr'g Tr. 9:6-12; *see* Hr'g Exs. 1-3. The first was a memorandum prepared September 13, 2004 by Mr. Cormack's Canadian patent attorney regarding potential prior art relevant to the invention later described in the '693 patent. Hr'g Ex. 1. The memorandum listed eleven patents

---

[6]In related vein, Northrop Grumman Systems also argues that at least some of the documents it seeks tangentially bear on the three waived subjects. Hr'g Tr. 14:13 to 15:4 (Aug. 5, 2014). (Additional citations to the hearing transcript will omit the date.) In essence, Systems argues that after the Patent and Trademark Office initially rejected the patent application on grounds of novelty and obviousness, Mr. Cormack could have responded by asserting the earlier date of conception. Hr'g Tr. 14:14-24, 44:16-22. In Systems's view, Mr. Cormack's choice to distinguish the application from prior art is indicative that the earlier date of the conception is not sustainable. Hr'g Tr. 15:20 to 16:4. This inference is unsupported and unsupportable. There is no evidence in the prosecution history that date of conception was at issue before the patent examiner.

identified by the searcher and provided detailed descriptions for seven of the references, concluding that none of them "teach, alone or in combination" the then-potential invention, but cautioning that similarities may create "difficulty [in] pursuing a patent." *Id.* at 2-3. Systems argues that this disclosed memorandum acts as a waiver not only to communications containing discussions about these particular prior-art references, but also to communications regarding any additional prior-art references that were addressed during patent prosecution. Hr'g Tr. 13:7-11. Mr. Cormack resists any extension of waiver to communications about other prior art. Hr'g Tr. 27:19 to 28:7. Dealing with a comparable issue, the court in *Phoenix Solutions* found that a disclosed document served as a waiver regarding the particular references discussed, but not others. *See* 254 F.R.D. at 578. In like vein, Mr. Cormack could not reasonably expect that later communications regarding the specifically identified prior-art references would remain privileged. Mr. Cormack must produce any additional communications regarding these particular references, whether or not they occurred after the patent filing date, but the waiver does not extend beyond those references.

The remaining two exemplars consist of e-mail communications between Mr. Cormack and counsel composed in the months leading up to filing. *See* Hr'g Exs. 2 & 3. In these e-mails, Mr. Cormack and his counsel examined, considered, and revised particular aspects of the draft application, refining and adding to the claim language and drawings in the proposed specifications. Northrop Grumman Systems argues that these e-mails disclose patent prosecution strategy, indicating how Mr. Cormack and counsel would respond to the patent examiner's potential objections and rejections. Hr'g Tr. 46:17-22. In particular, Systems points to a statement by counsel that the application should encompass "all possible embodiments [of the patent] that would cover what an infringer might do to try and design around the claims." Hr'g Ex. 2, at 1. These e-mails reflect ordinary, expected efforts by patent counsel. Nothing in the e-mails provides grounds for an all-encompassing waiver of privilege regarding attorney-client communications during patent prosecution.

## CONCLUSION

For the reasons stated, Northrop Grumman Systems's motion to compel is GRANTED IN PART, insofar as communications, regardless of creation date, relate to the prior-art references disclosed in a memorandum by prosecution counsel, dated September 13, 2004, Hr'g Ex. 1, but it is DENIED IN PART, as to documents sought which were generated after the filing date of the of the patent application, May 23, 2006, that do not relate to the issues of date of conception, date of reduction to practice, and due diligence.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge